UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL BRYAN,<br><br>　　　　　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>BRYAN McPHERSON, PAUL CROOK,<br>CORONADO POLICE DEPARTMENT,<br>CORONADO, DOES 1-20,<br><br>　　　　　　　　　　　　　　　Defendants. | CASE NO. 06CV1487-LAB (PCL)<br><br>**ORDER DENYING MOTIONS<br>FOR RECONSIDERATION**<br><br>[Docket nos. 77, 81] |

　　　On February 7, 2008, the Court granted in part and denied in part Defendants' motion for summary judgment, dismissing Plaintiff's *Monell* claims and denying Defendants' motion to dismiss claims against Defendant McPherson on qualified immunity grounds.

　　　At the pretrial conference on February 11, the parties requested leave to seek reconsideration of portions of this order. The Court now considers the parties' motions for reconsideration.

　　　As explained in the Court's Standing Order, ¶ 4(j), motions for reconsideration are not favored unless the Court is presented with newly discovered evidence, committed clear error, or there is an intervening change in controlling law. *See School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993).

**I.　Plaintiff's Motion**

　　　At the pretrial conference, Plaintiff suggested he had been improperly denied the opportunity to learn the identity of a man whom Defendant McPherson had allegedly shot with a Taser, and

1  therefore had been denied an opportunity to depose this man. The Court therefore issued an order
2  directing the disclosure of this information and providing for discovery. Plaintiff's motion for
3  reconsideration does not mention this man or any new evidence obtained in discovery.

4  Plaintiff also argued he could cite evidence and authority to support his *Monell* claim. In his
5  motion for reconsideration, however, Plaintiff merely reargues his claim that the City of Coronado
6  ("City") failed to set policies regarding use of Tasers and failed to train its officers specifically in when
7  to use or not use the Taser. Plaintiff's position is that the City's general "use of force" policy and
8  training were inadequate, Taser-specific training should have been provided, and that a Taser-specific
9  use of force policy should have been adopted. Plaintiff again argues, citing no authority other than
10 training materials provided by the Taser manufacturer, that the City was required to train officers
11 specifically in the factors set forth in *Deorle v. Rutherford*, 272 F.3d 1272, 1280–83 (9th Cir. 2001),[1]
12 and that the City's general "use of force" training was therefore clearly insufficient. *See id.* at 1280
13 ("These factors . . . are simply a means by which to determine objectively "the amount of force that
14 is necessary in a particular situation.'") (citing *Graham*, 490 U.S. at 396–97).

15 Plaintiff also again raises his argument the City should have trained its officers to take into
16 account whether a suspect was mentally ill or disturbed when deciding whether to deploy the Taser.
17 Why this is relevant here, where neither party contends Plaintiff was mentally ill, is not explained.

18 Plaintiff identifies no new evidence or change in controlling law, and fails to explain in any
19 respect why the Court's previous ruling manifested clear error. No other unusual circumstances
20 warrant reconsideration. Had the Court been apprised that Plaintiff's motion for reconsideration would
21 merely reargue his *Monell* claim more succinctly, Plaintiff would not have been granted leave to seek
22 reconsideration. *See Multnomah County*, 5 F.3d at 1263. The Court need not and does not reach the
23 merits of Plaintiff's motion, which in any event its previous order granting Defendants' motion for
24 / / /

---

[1] In fact, the materials provided by the manufacturer do not even advise as much. Rather, they suggest police department policies and training be revised "in light of" *Deorle*'s holding that a warning should be given "if feasible." (P.'s Mot. for Reconsideration, Ex. 4 at 11.) As a general matter, the Court notes the evidence Plaintiff has cited to in his briefing on the motions for summary judgment frequently does not support his claim to the extent he argues it does. Plaintiff's allegations or arguments regarding the evidence are not themselves evidence nor are they, by themselves, sufficient to withstand summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1  summary judgment has already addressed. Defendant McPherson has filed objections to the evidence
2  Plaintiff proffers, but the Court need not reach these. Plaintiff's motion is therefore **DENIED**.

3  **II.    Defendant McPherson's Motion**

4  Defendant McPherson focuses his efforts on showing that the Constitutional right in question
5  was not clearly established for purposes of the qualified immunity analysis. Specifically, the Court
6  must inquire whether Plaintiff's right was clearly established "such that it would be clear to a
7  reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533
8  U.S. 194, 202 (2001). This inquiry is "undertaken in light of the specific context of the case . . . ."
9  *Id.* at 201.

10  Officer McPherson asks the Court to take judicial notice of two opinions for the proposition
11  that the right was not clearly established. The Court **GRANTS** the request for judicial notice. *See*
12  Fed. R. Civ. P. 201(b). The first, *McDonald v. Pon*, 2007 WL 4420936 (W.D.Wash., Dec. 14, 2007),
13  decided after briefing on the motion for summary judgment was complete, is clearly distinguishable.
14  The plaintiff in that case, a suspect being arrested on suspicion of felony robbery, had been restrained
15  by agents employed by the store whose merchandise he was allegedly stealing. He was physically
16  combative with the agents, even punching one of them in the face. When the police arrived on the
17  scene, the agents were instructed to release the plaintiff, which they did. The police then ordered the
18  plaintiff to the ground, but plaintiff failed to comply. At that point, the police Tasered him. The
19  plaintiff then attempted to escape and was Tasered a second time.

20  Unlike this case, the plaintiff in *McDonald* was being arrested for a class A felony and had
21  resorted to violence shortly before police arrived. As the court there found, from the police officer's
22  perspective, the plaintiff was an uncooperative, combative felon who might have posted an immediate
23  threat to the threat of police and the store's agents. The court also found the officer had no other clear
24  options for dealing with the situation. Applying the factors set forth in *Graham v. Connor*, 490 U.S.
25  386, 396 (1989), the court held the defendant officer was entitled to qualified immunity.

26  The second case, *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004), is closer and
27  more favorable to McPherson's position. In *Draper*, the plaintiff, who had been stopped because his
28  license plate was not illuminated, was "hostile, belligerent, and uncooperative" and was told five times

to retrieve documents from the cab of his truck. Each time, it appeared he heard and understood the officer's instructions and requests to calm down but continued to argue, pacing around in agitation and yelling at the officer. After the plaintiff's fifth refusal, the officer shot him with the Taser. The defendant officer explained that he believed the plaintiff was going to fight him. The Eleventh Circuit went beyond determining the officer was entitled to qualified immunity, finding instead his actions were justified. The court held the single use of the Taser may have prevented a physical struggle, and therefore was reasonable as a matter of law.

Taking all evidence in the light most favorable to Plaintiff, it establishes Mr. Bryan was clearly agitated and repeatedly yelling either profanities or gibberish. In defiance of Defendant McPherson's instructions (which Bryan apparently did not hear), Bryan quickly exited his car, while repeatedly hitting his fists against his thighs. While Plaintiff was turning to the left, McPherson shot him with the Taser. It is unclear how far apart the two were or which direction Plaintiff was facing at the time.

Both *McDonald* and *Draper* are distinguishable, and the *Graham* factors do not favor McPherson as strongly as in either *McDonald* or *Draper*. *Draper* is generally more helpful to McPherson than is *McDonald* because it was published well before this incident. It is good law and no decision of the Ninth Circuit rejects or departs from it. Even if the Eleventh Circuit's holding were later reversed, the Court could not say an officer in McPherson's position would have been unreasonable in relying on it, or that a right *Draper* refused to recognize was "clearly established." The problem for McPherson, however, is that *Draper*, like *McDonald*, addressed a substantially different situation than the one at issue here.

In this case, like *Draper* but unlike *McDonald*, Plaintiff was stopped for a simple traffic violation. *See Graham*, 490 U.S. at 396. Plaintiff was clearly emotionally upset, behaving bizarrely, and not following instructions to remain in his car. As soon as Plaintiff exited his car, he began to turn as if looking for the officer who had stopped him. Furthermore, Plaintiff had his fists clenched and was making what could be interpreted as hitting motions. A reasonable officer could have interpreted these as evidence of an intent to attack. As the Court has noted, any reasonable officer in this situation would have recognized Plaintiff posed a potential threat and would have been wary.

///

On the other hand, Plaintiff was dressed only in boxer shorts and athletic shoes and his hands were visible, so it was clear Plaintiff was unarmed. *See Deorle*, 272 F.3d at 1281 n.18 (taking into consideration the fact that plaintiff was wearing only cut-off shorts and therefore could not have been hiding any weapons). Furthermore, although it appeared to observers Plaintiff made some kind of movement towards McPherson, Plaintiff testified he did not leave the place where he was standing, which may have been as much as 15 to 20 feet from McPherson. This distance is important to the Court's analysis, and under summary judgment standards the Court must credit Plaintiff's evidence. At 15–20 feet away, Plaintiff would have posed no immediate threat to McPherson or anyone else,[2] and alternative methods of controlling or dissuading him may have been available. Had Plaintiff been standing within a few feet of an officer or bystander, as was apparently the case in *McDonald* and *Draper*, the *Graham* factor relating to the safety of officers or others might have been resolved in Defendant McPherson's favor. While Plaintiff was apparently ignoring McPherson's instructions, there was no clear indication he heard or understood the instructions, as was the case in *Draper*.

Had this situation been more like that in *Draper*, the Court might have concluded as a matter of law Defendant McPherson "reasonably misapprehend[ed] the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). As it is, however, the situation was unlike that presented in *McDonald* or *Draper*. Defendant McPherson's motion for reconsideration is therefore **DENIED**.

**IT IS SO ORDERED**.

DATED: April 3, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[2] Plaintiff's brother, a minor, was in the car with him, but there is no suggestion Plaintiff appeared to pose any danger to him, or that anyone else was nearby.